**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**RICHARD JOSEPH GRISMER,**

        **Plaintiff,**

**-vs-**                                        **Case No. 6:13-cv-1003-Orl-DAB**

**COMMISSIONER OF SOCIAL
SECURITY,**

        **Defendant.**

_____

# Memorandum Opinion & Order

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying his claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case. Oral argument has not been requested.

For the reasons that follow, the decision of the Commissioner is **AFFIRMED.**

## I.    BACKGROUND

### A.    Procedural History

Plaintiff filed for a period of disability, and DIB on October 21, 2010, and for SSI benefits on January 27, 2012, alleging an onset of disability on May 1, 2002, due to a chemical imbalance, diabetes, and anxiety. R. 213[1]. R. 25, 152-160, 170-78, 209. His application was denied initially and

---

[1]Plaintiff's date of last insured for DIB was December 31, 2007. R. 231.

upon reconsideration. R. 93-99. Plaintiff requested a hearing, which was held on April 18, 2012, before Administrative Law Judge Gregory M. Hamel (hereinafter referred to as "ALJ"). R. 70-92. In a decision dated May 15, 2012, the ALJ found Plaintiff not disabled as defined under the Act through the date of his decision. R. 22-38. Plaintiff timely filed a Request for Review of the ALJ's decision, which the Appeals Council denied Plaintiff's on May 10, 2013. R. 2-7. Plaintiff filed this action for judicial review on July 1, 2013. Doc. 1.

### B.  Medical History and Findings Summary

Plaintiff was born on November 5, 1963 and was 48 years old at the time of the hearing. R. 22, 154, 170. He has a high school education and past work as a retail store manager and a salesperson. R. 32, 214.

Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary, Plaintiff complained of stress-induced panic attacks, fatigue, and inability to stand for long periods of time. R 198. After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from irritable bowel syndrome, atypical chest pain, generalized anxiety disorder, and panic disorder, which were "severe" medically determinable impairments, but were not impairments severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 27-29. The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform light work with the following additional limitations that he can only occasionally climb, balance, stoop, kneel, crouch, or crawl; he cannot climb ladders, ropes, or scaffolds; and he is limited to routine and repetitive tasks that do not require more than occasional public contact or more than occasional interaction with coworkers." R. 29. Based upon Plaintiff's RFC, the ALJ determined that he could not perform past relevant work. R. 32. Considering Plaintiff's vocational profile and RFC, the ALJ applied the Medical-Vocational Guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2, and, based on the testimony of the vocational expert ("VE"), the ALJ

concluded that Plaintiff could perform work existing in significant numbers in the national economy as a cleaner housekeeper, car wash attendant, and sandwich board carrier. R. 32-33. Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision. R. 33.

Plaintiff now asserts what are essentially two points of error, concerning the ALJ's treatment of the opinion of Dr. Keiseri as to Plaintiff's mental limitations and the ALJ's treatment of Plaintiff's problems with concentration, persistence or pace. Second, Plaintiff claims that the ALJ's finding regarding his medication side effects is not supported by substantial evidence. For the reasons that follow, the decision of the Commissioner is **AFFIRMED**.

## II.    STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account

evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. § § 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent his from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f).

## III.   ISSUES AND ANALYSIS

### A.   Mental limitations

Plaintiff argues that the ALJ erred in not establishing the requisite "good cause" for giving less weight to Dr. Keiseri's opinion. He also argues that the ALJ failed to properly assess his limitations with concentration, persistence, and pace in accordance with *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1180-81 (11th Cir. 2011). The Commissioner argues that the ALJ's opinion regarding Plaintiff's mental limitations is supported by substantial evidence.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of

-4-

the claimant's condition and the medical consequences thereof. *Id.* Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis*, 125 F.3d at 1440; *Edwards*, 937 F.2d at 583; 20 C.F.R. §§ 404.1527(d), 416.927(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

Dr. Keiseri at Orlando Behavioral Healthcare saw Plaintiff from 1998 to 2012 and prescribed medications; however, he only ever saw him only one or two times per year and took very limited (and partially illegible) notes. On February 22, 2012, Dr. Keiseri completed a non- SSA form prepared by Binder & Binder law firm (Plaintiff's former counsel) and opined that Plaintiff had depression, anxiety, and GAF score of 60 to 70. R. 454. Dr. Keiseri opined that he had poor memory, mood disturbance, emotional lability, recurrent panic attacks, anhedonia, psychomotor retardation, feelings of guilt/worthlessness, difficulty thinking and concentrating, social withdrawal and isolation, decreased energy, persistent irrational fears, and somatization unexplained by organic disturbance. R. 455. Dr. Keiseri opined that Plaintiff's limitations were reasonably consistent with his impairments (R. 456), and that he had moderate to marked limitations in functioning in multiple areas (R. 457-459). Dr. Keiseri opined that Plaintiff was incapable of even low-stress jobs, and had been unable to work for the last ten years (R. 460).

The ALJ gave limited weight to the opinion of Dr. Keiseri:

> Limited weight is given to the opinion of Dr. Keiseri, who opined that the claimant was markedly limited in sustained concentration and pace, social interaction and adaptation; the doctor also opined that the claimant would be incapable of low stress work because he has not worked in ten years. This opinion is given limited weight for several reasons. Although Dr. Keiseri is a treating physician, he indicated that he sees the claimant only once or twice a year. Further, this opinion is inconsistent with the doctor's own treatment notes that show the clamant is doing well with a stable mood and his consistently high GAF ratings. Lastly, this opinion is inconsistent with the claimant's limited mental health treatment, despite his alleged symptoms. The undersigned has also considered the State agency psychological consultant's assessments, both of which determined there was insufficient evidence for a disposition.

R. 32.

Plaintiff argues that none of the reasons given by the ALJ establish the requisite "good cause" and none of them are "explicit and adequate." The ALJ Commissioner contends the ALJ provided good reasons for rejecting Dr. Keiseri's opinion, consistent with 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

Plaintiff contends that Dr. Keiseri's records report more significant limitations than the ALJ indicated, and the ALJ failed to mention this evidence in discounting Dr. Keiseri's opinion. He contends that, even though the ALJ discounted Dr. Keiseri's opinion because his "own treatment notes show the clamant is doing well with a stable mood and his consistently high GAF ratings," every time Dr. Keiseri noted Plaintiff was "doing well" and had a "stable mood," he also noted there was no change in Plaintiff's problems and no change in diagnosis (R. 435, 436, 438), and another portion of Dr. Keiseri's opinion reports Plaintiff had emotional stress, chronic anxiety and depression, and was unable to hold a job (R. 432); fifteen years of panic attacks (R. 443); anxiousness (R. 445); panic (R 446); medication side effects (R 440); and a treatment record reports "stress." R. 353.

The Commissioner argues that the ALJ did not err in discounting Dr. Keiseri's opinion based his lack of a regular or consistent treatment of Plaintiff because the treating relationship is a proper factor to consider under 20 C.F.R. §§ 404.1527(c)(2)(i), 416.927(c)(2)(i) (noting that "generally the

longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion").

It is true that, while Dr. Keiseri treated Plaintiff over the course of several years, he generally only saw Plaintiff once per year. R. 432-53. Plaintiff acknowledges that Dr. Keiseri's treatment notes for Plaintiff are scarce (R. 353-364, 432-453, 464[2]), but argues that if the ALJ needed additional information for the basis of Dr. Keiseri's opinion, then he should have recontacted him, as directed in SSR 96-5p, which instructs an ALJ to recontact the medical source, even if the medical source provided opinions on issues reserved to the Commissioner, if the basis for the opinion is not clear. Doc. 17 at 11. Plaintiff also argues that Plaintiff was already being treated with medications and regular check-ups, thus, he was being maintained on the appropriate prescriptions for his condition[3].

The Court has reviewed the entirety of Dr. Keiseri's scarce treatment notes of what are essentially single biannual visits from Plaintiff, with the oldest dating back to 1998. As the Commissioner points out, the original diagnosis in March 1998 was panic disorder and depression. R. 443-46. Plaintiff had good insight and judgment, anxious mood, appropriate affect, and normal cognitive ability and intelligence, with mild social stressors. R. 443-45. Dr. Keiseri rated Plaintiff's impairment of work performance as mild. R. 443. Dr. Keiseri opined Plaintiff had no memory impairment. R. 445. The plan was for Plaintiff to be given a trial of medication. R. 447.

In April 2000, Plaintiff tried to stop the medications four days before and felt dizzy, but started the medications again and apparently requested a medication change due to an erectile problem. R. 440. Records from 2001 to 2002 note Plaintiff was doing well with stable mood (R. 364-66) until he had tried to get off the medications and he got depressed; he was requesting to start on the

---

[2]The notes redundantly appear in the Record in several exhibits.

[3]To the extent Plaintiff now argues that he could not afford additional treatment because he had earned no income since 2002 (R. 162-SSA record of earnings), he does not point to any evidence that his lack of mental health treatment was due to a lack of income as opposed to a lack of significant symptoms.

medications again. R. 448. In August 2003, he was stable on the medications, and he was requesting to continue on it. R. 449. He was still well in November 2004 and continued on the medications. R. 357.

At Plaintiff's annual appointments, Dr. Keiseri's treatment records consistently noted Plaintiff was doing well, had a stable mood, and assessed no changes in mental status during Plaintiff's treatment R. 361-62, 432-53. In October 2005, he was "doing well, taking care of his ill father who has lung cancer; his mood is good." R. 450. In September 2006 he was stable, doing well, and his medications were continued. R. 356. In July 2007, he was "stable on medications" with no other notations. R. 451. In May 2008 and February 2009, he was "doing well, mood stable" without elaboration. R. 355, 452. Similarly, in April 2010, Dr. Keiseri noted "stable and doing well, mood is stable." R. 453. In October 2010, Plaintiff was experiencing stress secondary to his father's illness because Plaintiff took care of him at that time; his dosage was increased. R. 353. Plaintiff's father passed away on November 17, 2010. R. 207. After Plaintiff had filed his application for benefits, in March of 2011, Plaintiff complained of financial stress, anxiety, and Dr. Keiseri noted under current concerns "Patient has [illegible] anxiety and depression and will be unable to keep on ongoing job." R. 432. He commented: "Patient advised to keep trying to get SSI." R. 432.

Without reference to corresponding or detailed clinic finding in his records, in February 2012, Dr. Keiseri inconsistently described Plaintiff as having numerous clinical findings (in addition to panic attacks) of poor memory, mood disturbance, emotional lability, social withdrawal, decreased energy, feelings of guilt/worthlessness, difficulty thinking or concentrating, and somatization unexplained by organic disturbance. R. 455. Dr. Keiseri also opined in February 2012 that Plaintiff would be moderately and markedly limited in several categories of understanding memory, sustained concentration and persistence, social interactions, and adaptation, along with episodes of deterioration and decompensation. R. 459. Dr. Keiseri's clinical "findings" are not consistent with his own

-8-

treatment notes with repeatedly found Plaintiff was "doing well" and his "mood was stable." R. 432-53. Pursuant to the Social Security Regulations, the ALJ is to consider the consistency of the treating physician's opinion with his own treatment notes. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The ALJ was entitled to conclude that, had Plaintiff's condition been as disabling as he alleged or as Dr. Keiseri opined, he would have sought additional treatment beyond a yearly visit for medication management. R. 32.

The inconsistency between Dr. Keiseri's treatment records and his 2012 opinion is a proper basis for the ALJ's decision to give Dr. Keiseri's opinion little weight. In addition, Dr. Keiseri's notations failed to note any change in Plaintiff's mental status (until his SSI application was filed) from his original opinion that Plaintiff had good insight and judgment, anxious mood, appropriate affect, and normal cognitive ability and intelligence, with mild social stressors. R. 443-45. As the ALJ also found, the two reviewing physicians noted specifically that they could not reach a conclusion on Plaintiff's mental condition because there was insufficient evidence to assess the severity of his limitations during the period prior to his date of last insured (December 2007), noting that the records from Orlando Behavioral Healthcare (Dr. Keiseri's practice) did not reveal the medical diagnosis for which Plaintiff was being treated. R. 273-285, 414-26. The ALJ's decision to give "little weight" to Dr. Keiseri's opinion was based on substantial evidence.

### B. Hypothetical Question

Plaintiff argues with regard to his moderate limitations in concentration, persistence or pace, his case is on point with *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1180-1181 (11th Cir. 2011), and the ALJ failed to properly accounted for his moderate limitations in concentration, persistence, and pace merely by restricting the hypothetical question to "simple, routine tasks or unskilled work." *Id.*, 631 F.3d at 1180. He also argues that the ALJ erred in not including any limitations in handling stress or changes in routine in the hypothetical question to the VE. The

Commissioner argues that the ALJ's RFC finding and hypothetical question to the VE properly accounted for his rating of "moderate" difficulties in maintaining concentration, persistence, or pace in accordance with the regulations, SSR 96-8p, and Eleventh Circuit case law, including *Winschel*. See 20 C.F.R. §§ 404.1520a(d)(3), 416.920a(d)(3); SSR 96-8p, 1996 WL 374184, at *4.

At the fifth step, the Commissioner bears the burden to show that, in light of the claimant's RFC and other factors, there exist in the national economy a significant number of jobs the claimant can perform. *Winschel*, 631 F.3d at 1180; 20 C.F.R. §§ 404.1520(a)(4)(V), 416.920(a)(4)(V). If such jobs exist, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a). An ALJ may make this determination by posing hypothetical questions to the VE. *See Winschel*, 631 F.3d at 1180. With regard specifically to moderate limitations in concentration, persistence, and pace, in *Winschel*, the Eleventh Circuit held:

> Other circuits have also rejected the argument that an ALJ generally accounts for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work. *See Stewart v. Astrue*, 561 F.3d 679, 684–85 (7th Cir. 2009) (per curiam); *Ramirez*, 372 F.3d at 554; *Newton*, 92 F.3d at 695. But when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations. *See Simila v. Astrue*, 573 F.3d 503, 521–22 (7th Cir. 2009); *Stubbs–Danielson v. Astrue*, 539 F.3d 1169, 1173–76 (9th Cir. 2008); *Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir.2001). Additionally, other circuits have held that hypothetical questions adequately account for a claimant's limitations in concentration, persistence, and pace when the questions otherwise implicitly account for these limitations. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 288 (6th Cir .2009) (concluding that the ALJ's reference to a moderate limitation in maintaining "attention and concentration" sufficiently represented the claimant's limitations in concentration, persistence, and pace); *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002) (concluding that the hypothetical question adequately incorporated the claimant's limitations in concentration, persistence, and pace when the ALJ instructed the vocational expert to credit fully medical testimony related to those limitations).
>
> In this case, the ALJ determined at step two that Winschel's mental impairments caused a moderate limitation in maintaining concentration, persistence, and pace. But the ALJ did not indicate that medical evidence suggested Winschel's ability to work was unaffected by this limitation, nor did he otherwise implicitly account for the

>limitation in the hypothetical. Consequently, the ALJ should have explicitly included the limitation in his hypothetical question to the vocational expert.

*Winschel,* 631 F.3d at 1180-81.

The ALJ found "[W]ith regard to concentration, persistence or pace, the claimant has moderate difficulties. The claimant's function report indicates that he does not handle changes in routine well, and his mother indicated in her third party function report that the claimant has difficulty handling stress appropriately. Nonetheless, the claimant acknowledged that he occasionally reads the newspaper or books, and that he uses the computer for Facebook and other activities. There are no mental status examination findings showing any significant concentration or attention deficit which causes serious functional loss." R. 29. As part of his RFC, the ALJ found:

>After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonable be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible for the following reasons[4]. Mr. Grismer had a strong work history until 2002. Nonetheless, despite his complaints of constant panic attacks he has had very limited treatment for his anxiety. Further, his treatment notes show consistently high GAF scores, with the lowest GAF score being 60. His mental health treatment notes show consistently that the claimant is doing well with his medication. Even with his worsening condition, he is quite active. As noted above, he is able to drive a car, do some vacuuming, mow the lawn, go to the grocery store, and manage his personal care and his finances.

R. 31.

In the hypothetical to the VE, the ALJ included a limitation "to routine and repetitive tasks . . . that have several steps, but the steps are not complicated or hard to remember, and they don't include a lot of involved oral instruction . . . and cannot do tasks requiring more than occasional public contact, or more than occasional interactions with co-workers even if co-workers might be present. But the person wouldn't have to interact with them on more than an occasional basis." R.

---

[4]Plaintiff does not explicitly challenge the ALJ's credibility determination.

87. The VE testified in response that the jobs of cleaner/housekeeper and car-wash attendant could be performed. R. 87.

The Commissioner contends that *Winschel* allows an ALJ to account for his PRT (Psychiatric Review Technique) ratings by means other than an explicit recitation of the rating(s), which, the Commissioner argues, the ALJ did in this case. The Commissioner cites a growing body of Eleventh Circuit cases which follow the reasoning in *Winschel* which states an ALJ's hypothetical question sufficiently accounts for his PRT rating of "moderate" difficulties in "maintaining concentration, persistence, or pace" when the medical evidence supports the ALJ's hypothetical question or the ALJ otherwise implicitly accounts for his rating. *Id.*, 631 F.3d at 1180-81. The Commissioner cites numerous Eleventh Circuit decisions which have concluded that limitations similar to the limitations noted by the ALJ in this case sufficiently accounted for a rating of "moderate" difficulties in maintaining concentration, persistence, or pace. Doc. 18 at 15-16 (citing *Timmons v. Comm'r of Soc. Sec.*, No. 12-16166, 2013 WL 3388234, at *9-10 (11th Cir. July 9, 2013) ("job should be simple, one-two step task, there should be only occasional contact with the public, coworkers, and supervisors"); *Hurst v. Comm'r of Soc. Sec.*, No. 12-15763, 2013 WL 2663092, at *2-3 (11th Cir. June 14, 2013) ("capable of simple, routine, repetitive tasks"); *Jacobs v. Comm'r of Soc. Sec.,* No. 12-15509, 2013 WL 2436454, at *2-3 (11th Cir. June 6, 2013) (limited to "one to three step non-complex tasks"); *Washington v. Soc. Sec. Admin., Comm'r*, 503 F. App'x 881, 883 (11th Cir. 2013) ("limited to performing only simple, routine[,] repetitive tasks with up to three-step demands, and only occasional changes in the work setting, judgment, or decision making"); *Scott v. Comm'r of Soc. Sec.*, 495 F. App'x 27, 28-29 (11th Cir. 2012) ("low stress, simple, unskilled; one, two, or three step instructions"); *Rosario v. Comm'r of Social Sec.*, 490 F. App'x. 192, 195 (11th Cir. 2012) ("simple, routine, and repetitive tasks in an environment with only brief interactions with co-workers and public"); *Forrester v. Comm'r of Soc. Sec.*, 455 F. App'x 899, 903 (11th Cir. 2012) ("simple,

routine, and unskilled work"). In the cited cases for the most part, the administrative records reflected opinions from state agency consulting physicians that these plaintiffs were capable of "simple routine tasks."

In this case, there are no opinions from the state agency consultants because there was insufficient evidence to assess the severity of Plaintiff's limitations. *See* R. 285, 414. Thus, the ALJ was forced to focus on Plaintiff's testimony and the records of Dr. Keiseri. As discussed more thoroughly above, Dr. Keiseri's treatment notes reflected that Plaintiff was "doing well" and "his mood was stable." R. 359-64. According to Dr. Keiseri, Plaintiff had only a "mild" impairment of work performance in the original (and unmodified) treatment notes (R. 444), an opinion which was not revised until after Dr. Keiseri became aware that Plaintiff was applying for SSI in 2010. R. 432. Plaintiff himself stated, "I pay attention very well," he stated he was "good" at following spoken instructions, and he followed written instructions "fairly well," although he did not handle changes in routine well. R. 204-05. Plaintiff's mother, with whom he lives, completed a Third Party Function Report opining that his ability to pay attention is "generally good" and his ability to follow written and spoken instructions was "fair." R. 191. In addition, Dr. Keiseri's treatment notes indicate that Plaintiff was responsible for taking care of his father beginning in October 2005 (R. 450) up until his death in November 2010. R. 207. Plaintiff's lack of treatment for his anxiety, his activities of daily living (occasionally reading the newspaper or books, and using the computer for Facebook and other activities), his own and his mother's statements of his attention/concentration abilities, as well as the lack of "mental status examination findings showing any significant concentration or attention deficit which causes serious functional loss" are factors that the ALJ is entitled to rely on in determining Plaintiff's limitations. R. 29. The ALJ sufficiently accounted for Plaintiff's moderate difficulties in maintaining concentration, persistence, or pace by limiting him to routine, repetitive tasks, with

several uncomplicated, easy-to-remember steps, with occasional public and coworker interaction. R. 87. Accordingly, the ALJ's decision was based on substantial evidence.

### C. Side Effects

Plaintiff argues that the ALJ's finding on medication side effects is not supported by substantial evidence. The Commissioner argues that the ALJ properly considered the side effects of Plaintiff's medications. The ALJ found the records did not indicate Plaintiff's medications had cause side effects:

> His medication report indicates that he takes the medications metformin, Celexa, lisinopril, and lovastatin for his impairments, and he testified that the Celexa makes him drowsy. However, there is nothing in the treatment records to suggest that the medication has not been effective in alleviating symptoms or has caused side effects that reduce his ability to work beyond the limitations noted in the residual functional capacity assessment.

R. 31.

Plaintiff argues that under the SSA regulations the ALJ is to "consider . . . the type, dosage, effectiveness and side effects of any medication [the claimant] takes or have taken." 20 C.F.R. § 404.1529(c)(3)(iv). He argues the ALJ had a duty to elicit testimony and make findings regarding the effect of prescribed medications upon the ability to work, and the findings must be supported by substantial evidence. *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002) (citing *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Cowart v. Schweiker*, 662 F.2d 731, 737 (11th Cir. 1981).

Plaintiff points to his testimony that he takes medications for panic attacks, diabetes, blood pressure, and cholesterol (R. 80), which (according to his representations) cause lethargy, upset stomach, and dry mouth (R. 81), dizziness (R. 440) and to other treatment records noted "fatigue and malaise" without elaboration. R. 319. Plaintiff contends the ALJ erred in finding that "there is nothing in the treatment records to suggest that the medication . . . has caused side effects that reduce

-14-

his ability to work beyond the limitations noted in the residual functional capacity assessment" (R. 31) because treatment records noted that medications caused dizziness[5] (R. 440), and Plaintiff was trying to get off medications (R. 358), which he now argues indicate that side effects were significant. R. 358.

The Eleventh Circuit has held that when a represented claimant raises a question as to the side effects of medications, but does not otherwise allege the side effects contribute to the alleged disability, the ALJ does not err in failing "to inquire further into possible side effects." *Cherry v. Heckler*, 760 F.2d 11 86, 1191 n.7 (11th Cir. 1985); *Burgin v. Commissioner of Social Security,* 420 Fed. Appx 901, 904 (11th Cir. March 30, 2011) ( unpublished). When there is no evidence before the ALJ that a claimant is taking medication that causes side effects, the ALJ is not required to elicit testimony or make findings regarding the medications and their side effects. *Passopulos v. Sullivan*, 976 F.2d 642, 648 (11th Cir. 1992); *see also Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990) (holding that where the claimant did not complain about the side effects from her prescription medications, other than an isolated mention that they might be responsible for causing her headaches, and where the record did not disclose any concerns from her doctors about side effects, substantial evidence supported the determination that the side effects did not present a significant problem).

In this case, Plaintiff was represented by counsel at the hearing, and counsel inquired about side effects from Plaintiff's medications. R. 80-81. Plaintiff testified there were "not too many" although he had "a little bit of lethargy" from the anxiety medication. R. 81. He had a "little bit of dry mouth and definitely some upset stomach but that is about it." R. 81. There were no complaints about the side effects Plaintiff now argues noted in the records of Dr. Keiseri's who prescribed the anxiety medication. Because the evidence was that Plaintiff was experiencing only a "little bit" of

---

[5]Plaintiff did not mention dizziness as a side effect at the hearing. R. 81. The only treatment record Plaintiff cites to establish the existence of dizziness as a side effect actually mentions dizziness as a side effect of Plaintiff's attempt to stop taking his medication. R. 440. Plaintiff's medication was changed, and there is no further indication of dizziness in the record.

-15-

side effects from his medications, the ALJ was not required to make findings regarding his side effects when assessing his subjective complaints. *See Passopulos*, 976 F.2d at 648.

The ALJ properly noted the lack of evidence that medication side effects reduced Plaintiff's ability to work as further evidence to support his credibility finding. R. 31. *See Swindle*, 814 F.2d at 226 (rejecting claim that the ALJ failed to consider medication side effects where the claimant scarcely complained about side effects and her physicians did not express any concerns about side effects). Accordingly, substantial evidence supports the ALJ's conclusion.

## IV. **CONCLUSION**

For the reasons set forth above, the ALJ's decision is consistent with the requirements of law and is supported by substantial evidence. Accordingly, the Court **AFFIRMS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on September 3, 2014.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record